**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

**Civil Action No. 13-cv-02195-MSK-KLM**

**JAH IP HOLDINGS, LLC; and
JH INVESTMENTS, LLC,**

      **Plaintiffs - Counterclaim Defendants,**

**v.**

**DAVID MASCIO;
NARDI CAPITALE, LLC;
DELLA PAROLA CAPITAL RESEARCH, LLC; and
DELLA PAROLA HOLDING COMPANY, LLC,**

      **Defendants – Counterclaim Plaintiffs,**

**-------
and
-------**

**DAVID MASCIO;
NARDI CAPITALE, LLC;
DELLA PAROLA CAPITAL RESEARCH, LLC; and
DELLA PAROLA HOLDING COMPANY, LLC,**

      **Third-Party Plaintiffs,**

**v.**

**JASON HALL,**

      **Third-Party Defendant,**

**-------
and
-------**

**JASON HALL,**

      **Third-Party Plaintiff,**

**v.**

1

**SHAWN DUNNIGAN,**

  **Third-Party Defendant.**

---

**OPINION AND ORDER GRANTING, IN PART, MOTION FOR SUMMARY JUDGMENT AND DISMISSING REMAINING CLAIMS FOR LACK OF SUBJECT-MATTER JURISDICTION**

---

  **THIS MATTER** comes before the Court pursuant to the Defendants' Motion for Summary Judgment **(# 54)**, the Plaintiffs' response **(# 61)**, and the Defendants' reply **(# 66)**, and the Defendants' Motion for Leave to Restrict Access **(# 55)** to one of the exhibits supporting their summary judgment motion.[1]

## **FACTS**

  This story of a business partnership that went sour begins in the Complaint **(# 1)**. Plaintiffs JAH IP Holdings, LLC ("JAH") and JH Investments, LLC are operations that were owned and controlled by Jason Hall.  Defendant Nardi Capitale, LLC is an entity that was owned and controlled by Defendant David Masico.  Through these entities, Mr. Hall and Mr. Masico entered into a business arrangement in which they formed Defendant Della Parola Capital Research, LLC ("DP Research").

  From 2010 to October 5, 2012, Mr. Hall worked as an employee of DP Research. The Plaintiffs contend that Mr. Hall's employment terminated on October 5, 2012, but beginning in November 2012, through the JAH entity Mr. Hall "began using information and strategies known in the investment and trading industries to develop a software application to automate investment and trading strategies."  "On behalf of JAH," Mr. Hall developed a software

---

[1]  Also pending are a variety of additional motions **(# 64, 65, 69, 84)** but none affect the outcome herein.

application known as "Tau." JAH registered Tau with the U.S. Copyright Office in May 2013.

JAH licensed Tau to JH Investments, which, in turn, licensed Tau to DP Research. The Plaintiffs

contend that in July 2013, JAH terminated JH Investment's license to use Tau, which, in turn,

terminated DP Research's license to do so. The Plaintiffs claim that the Defendants continued to

use the Tau software despite termination of the licenses.

Based on these and many other allegations, the Plaintiffs assert six claims against the

Defendants: (i) copyright infringement, in that the Defendants "unlawfully and willfully copied

all or a substantial part of Tau" and made use of the software in violation of JAH's copyright in

the software; (ii) contributory copyright infringement, in that each Defendant contributed to each

others' infringing use of the Tau software; and (iii)-(vi) various state statutory and common-law

claims sounding in, for example, breach of contract and misappropriation of trade secrets.[2]

On December 9, 2013, the presiding Magistrate Judge entered a Scheduling Order (**# 32**)

in the primary action (between the Plaintiffs and Defendants), setting a discovery deadline of

May 27, 2014. The Docket does not reflect any request by any party to extend that deadline. On

June 27, 2013, the Defendants filed the instant Motion for Summary Judgment (**# 54**), seeking

summary judgment on all of the Plaintiffs' claims against them.

As pertinent here, the Defendants argue that the Plaintiffs' copyright infringement claims

fail because: (i) Mr. Hall created Tau while he was employed by DP Research, rendering the

---

[2]     The Defendants' Amended Answer (**# 47**) asserts several counterclaims against the Plaintiffs. One seeks a declaratory judgment that "JAH does not own the copyright interest in" various versions of the Tau software; the remaining counterclaims, like the Plaintiffs' claims, raise various state statutory and common-law claims. Although captioned only as a "Counterclaim," this document also sought to assert third-party claims by the Defendants against Mr. Hall himself. Mr. Hall, in turn, filed an Answer (**# 56**) to the third-party claims, asserting his own counterclaims against some of the Defendants. All of Mr. Hall's claims sound in state common law. In addition, Mr. Hall's Answer to the Defendants' third-party claims itself asserted third-party claims against Shawn Dunnigan. These various claims and counterclaims are not material to the resolution herein.

software a "work for hire' the copyright for which belongs to DP Research by operation of 17 U.S.C. § 201(b); and (ii) alternatively, that the 2010 contract between Mr. Hall (via JH Investments, LLC) and Mr. Masico (via Nardi Capitale, LLC) operated to automatically transfer any documents or compilations created by the parties to DP Research, effectively constituting a license to DP Research to continue to use Tau.

The Plaintiffs' response to the Defendants' summary judgment motion is unusual. They offer no substantive response to the Defendants' arguments; rather, pursuant to Fed. R. Civ. P. 56(d), the Plaintiffs merely request that the Court defer consideration of the Defendants' motion pending further discovery. Neither Plaintiff asserts that it was deprived of an opportunity to conduct meaningful discovery between the December 2013 Scheduling Order and the May 2014 discovery deadline.

Instead, the Plaintiffs' response refers to the Defendants' filing of third-party claims against Mr. Hall in June 2014 – after the discovery deadline had already passed – and "the confusing nature of the motion of (sic) summary judgment filed after Mr. Hall became a party but stating (sic) he is not a plaintiff,". This, the Plaintiffs say, left them and Mr. Hall "unsure of who the non-movant is." The Plaintiffs' response goes on to reference certain items of discovery that Mr. Hall (or, arguably, the JH Investments or JAH) would seek to obtain. The Plaintiffs' response is supported by an affidavit from Mr. Hall, stating that "Due to matters outside my control, at this time, I cannot gather affidavits or declarations sufficient to show why Defendants are not entitled to summary judgment." Mr. Hall's affidavit does not describe these "circumstances beyond [his] control," other than to describe difficulties that he has had securing a voluntary statement from Gavan Duemke, a partner of his in another business venture.

**ANALYSIS**

4

## A. Rule 56(d)

Because the Plaintiffs have invoked Rule 56(d) and requested that the Court defer consideration of the Defendants' summary judgment motion pending further discovery, the Court must first determine whether relief under that rule is appropriate.

Fed. R. Civ. P. 56(d)[3] states that "if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" defer consideration of the motion, grant additional discovery, or take such other action as is warranted.   The "affidavit" required by Rule 56(d) must identify: (i) "the probable facts not available"; (ii) why those facts cannot currently be presented; (iii) what steps the nonmovant has taken to obtain those facts; and (iv) how additional time will enable the party to obtain the facts. *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010). It is not enough for a party to simply declare that discovery is incomplete, or to describe the desired evidence in general terms; rather, the party must "state with specificity how the additional material will rebut the summary judgment motion." *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1179 (10th Cir. 2008).   In other words, the nonmovant must make a proffer of the particular facts it believes it can obtain evidence of, and demonstrate how those facts would, if established, be sufficient to rebut the motion.   Moreover, the party seeking relief under Rule 56(d) must show good cause as to why the necessary evidence has not yet been obtained as the Court will not relief "to a party that has been dilatory in conducting discovery."   *Id.*

The Plaintiffs have not carried this burden.   The record reflects that the Scheduling Order afforded the parties nearly six full months to conduct discovery on the Plaintiffs' claims and the Defendants' counterclaims, including the Defendants' counterclaim for a declaration that they,

---

[3]      Created by amendments to Rule 56 in 2010, Rule 56(d) simply carries forward the former provisions of Fed. R. Civ. P. 56(f).  *See Advisory Committee note to 2010 Amendments*.

5

not the Plaintiffs (or Mr. Hall), were entitled to the copyright in the Tau software. The record does not reflect any unusual obstacles arising during the discovery process: a stipulation (**# 35**) between the parties in early January 2014 recites that the Plaintiffs tendered written discovery requests to the Defendants on December 7, 2013 and provided that the Defendants would respond to those requests by January 23, 2014. Mr. Hall's affidavit, submitted in support of the Plaintiffs' response, reflects that the principals of both sides – Mr. Hall and Mr. Mascio – were deposed on successive days in early May 2014. The docket sheet does not indicate that either party sought judicial intervention to resolve any discovery disputes arising during the discovery period, nor did any party move to extend the discovery deadline owing to difficulties in obtaining discovery. Under these circumstances, the Plaintiffs have failed to offer any meaningful explanation as to why they were nevertheless unable to obtain the evidence necessary to rebut the summary judgment motion.

The explanation offered in the Plaintiffs' response is somewhat muddled, but appears to boil down to the assertion that, because the Defendants interposed third-party claims against Mr. Hall himself in June 2014, <u>Mr. Hall</u> needs the opportunity to conduct additional discovery. But this explanation fails to recognize that the Defendants' motion seeks summary judgment on the claims asserted by <u>the Plaintiffs</u> – JH Investments and JAH – not on any claims asserted by or against Mr. Hall personally.[4] Moreover, the third-party claims interposed against Mr. Hall were

---

[4]     Perhaps anticipating this difficulty, the Plaintiffs make a passing contention that the Defendants' summary judgment motion is "confusing" because it "is replete with references to Mr. Hall, individually, and makes [ ] clear that some of the allegations and claims refer to Mr. Hall, individually and not to JH or JAH." Having reviewed the motion, the Court finds that no reasonable counsel could misunderstand the thrust of the motion. It is unambiguously directed at <u>claims</u> by JH Investments and JAH, even though it depends heavily on facts regarding certain <u>actions</u> that Mr. Hall himself took or did not take. This is not surprising: entities such as the Plaintiffs do not act of their own accord; it is the actions of their principals, officers, agents, and employees that constitute the acts of the entity. (This is particularly so with entities such as JH

filed in June 2014, after the discovery deadline had already passed with regard to the Plaintiffs'

claims against the Defendants.   The Plaintiffs can hardly assert that a failure to complete

discovery on their own claims by late May 2014 was caused by the Defendants interposing

claims against Mr. Hall after that date.

Moreover, it appears to the Court that much of the evidence the Plaintiffs would need to

respond to the Defendants' motion would be obtained from Mr. Hall himself.  The Defendants

contend, for example, that Mr. Hall was an employee of DP Research when he created the Tau

software, based on factors such as that Mr. Hall was subject to the direction and control of DP

Research at the time he was working on the software, that he was not highly skilled, that the

work took place in DP Research's offices and used DP Research's tools and equipment, and so

on.  To the extent the Plaintiffs dispute these and other averments by the Defendants, it seems

natural that bulk of any contrary evidence would come from Mr. Hall himself – *e.g.* that he wrote

the Tau software at home, or that DP Research did not direct his activities when it came to

writing the software, etc.  It is undisputed that the Plaintiffs had access to Mr. Hall when

preparing their summary judgment response, as that response contains an affidavit from Mr. Hall

addressing collateral issues.  Nevertheless, the Plaintiffs have not produced any evidence from

Mr. Hall himself offering any substantive response to the Defendants' motion.

Under these circumstances, the Court finds that the Plaintiffs have failed to carry their

burden necessary to obtain relief under Rule 56(d).  They have failed to show diligent efforts to

obtain the necessary discovery during the discovery period and have failed to demonstrate why

---

Investments or JAH, of which Mr. Hall is admittedly the sole member.)  At other times, Mr. Hall
was also an employee of DP Research, and thus, in some circumstances, his actions as an
employee or as an individual may have a legal significance that bears on the Plaintiffs' claims.
However, the mere fact that the Defendants' motion makes references to Mr. Hall personally
does not render the motion "confusing" or otherwise entitle the Plaintiff entities to additional
discovery in support of their own claims.

they cannot produce the evidence necessary to oppose the Defendants' motion at this time. Given that the Plaintiffs had a full opportunity to conduct discovery and present meaningful evidence as part of their response, it is appropriate for this Court to proceed to decide the underlying summary judgment motion based on the record as it currently stands.  *See Alpine Bank v. Hubbell*, 555 F.3d 1097, 1114 (10th Cir. 2009).

### B.  Summary judgment motion

#### 1.  Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P.

56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and  enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### 2.  Copyright claims – "work for hire"

The Defendants seek summary judgment on the Plaintiffs' copyright claims, arguing: (i) the Plaintiffs have no copyright interest in the Tau software because Mr. Hall created it as a "work for hire" for DP Research, thus granting that entity the copyright in the software; and (ii) that even if the Plaintiffs hold a copyright in the software, they licensed the software to DP Research.

The Copyright Act generally provides that copyright ownership "vests initially in the author or authors of a work."  17 U.S.C. § 201(a).  However, 17 U.S.C. § 201(b) provides that "in the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title and, unless the parties have expressly

agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." The Act states that "a work prepared by an employee within the scope of his or her employment" is a work for hire. 17 U.S.C. § 101. Thus, the question presented here is whether Mr. Hall created the Tau software while an employee of DP Research and within the scope of that employment. To determine whether such a situation exists, the Court turns to principles of the common law of agency to ascertain whether the work was produced by Mr. Hall as an employee of DP Research, or whether he performed that task as an independent contractor. *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 750-51 (1989).

The essential character of an employment relationship is the employer's right to control the manner and means by which the product is produced. *Id.* In examining that question, the Court considers numerous factors: (i) the level of skill required; (ii) the source of the tools or instrumentalities used in producing the work; (iii) the location of the work; (iv) the duration of the relationship between the parties (a ongoing relationship that extends beyond the time necessary to produce the work tips in favor of a finding of employment); (v) whether the ostensible employer had the right to assign additional projects to the alleged employee; (vi) the method of payment; (vii) the alleged employee's ability to hire and pay assistants; (viii) whether the work is part of the regular business of the alleged employer; (ix) whether the alleged employer is engaged in business; and (x) the provision of employee benefits to and other tax treatment of the alleged employee. *Id.* No particular factor is necessarily dispositive.[5] *Id.*

---

[5]      The Second Circuit applies a slightly different test, the "instance and expense test," examining "the person at whose instance and expense the work was created." *Martha Graham School and Dance Foundation, Inc. v. Martha Graham Center of Contemporary Dance, Inc.*, 380 F.3d 624, 634-35 (2d Cir. 2004). The test is satisfied when an employer "induces the creation of the work and has the right to direct and supervise the manner in which the work is carried out," even if the right to direct and supervise is never actually exercised. *Id.* at 635. Inducement of the creation of a work does not require an express command from the employer,

Based on the Plaintiffs' contention in the Complaint[6] that the Copyright Office issued a Certificate of Registration for the Tau software to JAH, the Court will treat the Defendants as having the burden of proving that Mr. Hall actually created the software as a work for hire for DP Research. *See Estate of Burne Hogarh v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 167 (2d Cir. 2003).

The Defendants have correctly identified the *Reid* factors and adduced evidence with regard to each. They demonstrate that Mr. Hall commenced working for DP Research in 2009, first as an intern and later as an employee, although he also held a small ownership stake in the business as well. In 2012, Mr. Hall worked out of DP Research's office in Fort Collins, Colorado. He was paid on a salary basis in the beginning of 2012, but on the advice of DP Research's CPA, in October 2012, Mr. Hall was paid a percentage of DP Research's revenues; such payments did not include withholdings for employment taxes. Although Mr. Hall worked on the Tau software during this period, he also performed other duties for DP Research: according to Mr. Mascio's affidavit, he "executed trades, monitored market conditions, conducted research . . . and performed administrative tasks." Mr. Mascio states that he "supervised all of [Mr. Hall's] work" and it was Mr. Mascio's decision "as to whether to proceed with the [Tau software] and as to what, if any, use would be made" of it. Mr. Hall was

---

as "many talented people . . . are expected by their employer to produce the sort of work for which they were hired, without any need for the employer to suggest any particular project." *Id.* at 640-41. What is necessary is that the work "has been created at the employer's behest or to serve the employer's interests." *Id.* at 641.

Regardless of whether this Court applies the "instance and expense" test or merely considers the *Reid* factors, the outcome is the same.

[6]     The Court does not normally defer to assertions in pleadings at the summary judgment stage that are not supported by evidentiary proof, particularly where a fact such as the issuance of a Certificate of Registration is precisely the type that the Plaintiffs could have produced without needing to undertake any discovery whatsoever. Nevertheless, in order to give the Plaintiffs the full benefit of the doubt, the Court will assume, without finding, that such a Certificate exists.

sometimes assisted by another employee who was hired and compensated by DP Research, not by Mr. Hall or the Plaintiffs.  Mr. Hall used DP Research's computers and offices to create the software, including DP Research's own subscription to a service that provided the data stream analyzed by the software.

Mr. Hall's deposition, submitted by the Defendants, corroborates some of these allegations.  Mr. Hall describes himself as an "employee" of DP Research and states that his duties were "making trades and screening securities."  He confirms that by mid-2012, he worked out of DP Research's offices.  Although he did not consider Mr. Mascio his "supervisor," Mr. Hall conceded that Mr. Mascio could "fire" him.  Mr. Hall reported to the offices daily through at least March 2013.  Mr. Hall stated that, when he began programming the Tau software in November 2012, he did it "not as an employee, because [he] wasn't receiving a salary."  He considered himself to be "an owner of the company, and [he] . . . wanted the company to make more money."  The software was completed in or about February 2013, although DP Research began using it in December 2012.  Mr. Hall states that he would program the code, run tests on it using historical data, discuss the results with Mr. Mascio, and make changes to the software based on their discussions.  He agreed that, although he could have used a different program or even written the code out by hand, he used DP Research's office computers and its subscription to the data service to create the Tau software.  Mr. Hall acknowledged that he never actually discussed licensing the Tau software to DP Research, much less presented any licensing agreement.  Rather, it appears that he simply tendered the software to DP Research for its use in the hopes that it would assist him in demonstrating his worth and negotiating for a greater stake in the company: he harbored an "understanding that David Mascio understood that I was making a significant contribution to the company [by providing the software] in exchange for being a

more equal partner."  He later withdrew – at least in his own mind – the license he had granted

when negotiations over a greater stake in the company broke down.

Based on these facts, the Court finds that the Defendants have demonstrated, as a matter

of law, that Mr. Hall's creation of the Tau software was in the scope of his employment as an

employee of DP Research, making that software a work for hire.  All the major factors point

towards a conclusion that Mr. Hall created the Tau software specifically for DP Research's use,

as part of his ongoing employment, using DP Research's tools and equipment to do so, in

consultation with Mr. Mascio, and that he supplied the software to DP Research without any

formal licensing agreement, hoping only that his efforts would assist the company and result in

him being held in higher esteem (and assist him in negotiations for a greater share of the

business).  *Accord Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 141 (2d Cir. 2013) ("Kirby's

works during this period were hardly self-directed projects in which he hoped Marvel, as one of

several potential publishers, might have an interest; rather, he created the relevant works

pursuant to Marvel's assignment or with Marvel specifically in mind"); *U.S. Auto Parts Network,

Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1018 (9th Cir. 2012) (reversing grant of summary

judgment to software creator, finding genuine issues of fact as to whether his maintenance of the

software during his employment, specifically for his employer's benefit, rendered such software

a work for hire); *Avtec Systems, Inc. v. Pfeiffer*, 21 F.3d 568, 572 (4th Cir. 1994) (proof that

employee "was at least appreciably motivated by a desire to further [employer's] corporate

goals" satisfies test).

The only factor that would seem to favor the Plaintiffs' position – that Mr. Hall was an

independent contractor retaining rights to the software – derives from the fact that DP Research

had stopped paying Mr. Hall a salary in November 2012, thereafter compensating him only for

his ownership stake in the business.  In this regard, *JustMed, Inc. v. Byce*, 600 F.3d 1118 (9th Cir. 2010), is instructive.  There, the defendant, Byce, was a co-owner and employee of the plaintiff, JustMed, Inc., responsible for maintaining and improving JustMed's computer software (among other things)  Byce, working from home, would develop code and send it to JustMed for evaluation, and JustMed and Byce would then discuss ways to improve it.  *Id.* at 1122.  As a startup business with little incoming revenue, JustMed offered Byce a salary, although it initially paid that salary completely in shares of its own stock, making no employment-related deductions from his compensation.  (It later began paying him with a combination of both cash and stock).  *Id.*  Eventually, believing that he was not being treated as "an equal in the corporation," Byce began asserting control over the software, substituting his own name for JustMed's in copyright notices and, eventually, deleting the software from company computers so that he could exercise sole control over it in order to enhance his position in upcoming negotiations.  *Id.*  Litigation then ensued.  After a bench trial, the trial court concluded that Byce's software constituted a work for hire, such that JustMed was entitled to ownership of the copyrights.  On appeal, the 9th Circuit largely affirmed that finding.

The Court of Appeals noted the various *Reid* factors, and acknowledged Byce's argument that the trial court "ignored crucial facts, especially JustMed's tax treatment of Byce, the failure to fill out appropriate employment forms, the lack of any written agreement regarding Byce's employment or salary, and the lack of stock certificates for shares Byce was accruing." *Id.* at 1126.  However, the court found those factors did not compel a different outcome.  It noted that JustMed hired Byce for various purposes, not "for a specific term or with a discretely defined end product in mind." *Id.*  It noted that JustMed assigned tasks to Byce beyond simply updating the software, and found that the software was "integral to JustMed's regular business." *Id.* at

1126-27.  It conceded that JustMed "did not exercise much control over the manner and means by which Byce created the [software]," but gave that factor less weight given the customary independence that programming-type employees enjoy; it further found that the fact that JustMed "did have some input into Byce's work on the software" could "weigh[ ] heavily" in favor of finding an employment relationship.  *Id.* at 1127, *quoting Aymes v. Bonelli*, 980 F.2d 857, 862 (2d Cir. 1992).

The court recognized that "Byce's strongest argument turns on Justmed's failure to pay benefits and fill out the appropriate employment forms, and JustMed's tax treatment of Byce." *Id.* at 1128.  However, it concluded that such conduct "is more likely attributable to the start-up nature of the business than the Byce's alleged status as an independent contractor."  *Id.*  It noted that "as a small start-up company, JustMed conducted its business more informally than an established enterprise might," but concluded that these irregularities did not rebut the evidence that Byce was an employee.  *Id.*

Mr. Hall's employment situation closely resembles that of Byce's: both occupied the role of both employee and co-owner of the business in question; both were hired for indefinite terms to perform a variety of duties, only one of which involved developing software; the software in question was specifically created for the use of the particular companies involved; and both received some direction from the company as to how the software could be improved or modified.  (If anything, Mr. Hall's situation presents an even stronger case for employment status, as he, unlike Byce, developed the software on DP Research's premises during regular work hours.)  Like Byce, Mr. Hall's strongest argument that he was an independent contractor stems from the fact that he was not subjected to the type of payroll withholdings typically applicable to employees.  But, as the 9th Circuit explained, in circumstances such as this, this is

more of a reflection on the sophistication of the business entity, rather than indicia of an independent contractor arrangement.

Here, the Defendants contend that Mr. Hall's compensation was changed from a salary (after withholdings) to a share of company revenues (with no withholdings made) for "tax reasons." As in *Byce*, this factor, although indicative of somewhat shady employment practices, nevertheless carries little weight in the analysis in light of the other circumstances. Nothing in the record indicates that, despite no longer receiving a fixed salary, Mr. Hall ceased performing the same type of tasks he had previously been performing for DP Research as an employee, nor does the record reflect any objective indicia that Mr. Hall viewed the cessation of his salary-based compensation as severing his employment with DP Research. Rather, by all appearances, he continued to perform the same tasks on roughly the same schedule as he had previously. Accordingly, as with *Byce*, this Court finds that abnormalities in the manner in which Mr. Hall was compensated cannot overcome the remaining *Reid* factors that all tip in favor of a finding that Mr. Hall created the Tau software in the scope of his employment.

Accordingly, on the undisputed facts, the Court finds that, as a matter of law, Mr. Hall's creation of the Tau software occurred while he was an employee of DP Research, acting in the scope of his employment. As a result, the software is a work for hire under 17 U.S.C. § 201(b), and the copyright in such software inures to DP Research, not Mr. Hall (much less the Plaintiffs). Because the Plaintiffs cannot show that they hold a copyright in the software, their claims for copyright infringement against the Defendants fail, and the Defendants are entitled to summary judgment on those claims. (Moreover, although the Defendants did not seek such relief, the outcome herein necessarily entitles the Defendants to judgment in their favor on their

counterclaim for a declaratory judgment that they hold copyright in the Tau software as a work for hire.)

### C.  Remaining claims

The copyright claims in this action are the only claims over which this Court has original subject-matter jurisdiction.  Having now resolved those claims, the Court finds it inappropriate to continue to exercise supplemental jurisdiction over the remaining state-law claims, counterclaims, and third-party claims.  28 U.S.C. § 1367(c)(3).  Notably, those state law claims involve extensive, factually-complex matters entirely collateral to the question of ownership of the copyrights in the Tau software, making them particularly unsuitable for the exercise of supplemental jurisdiction.  *See* 28 U.S.C. § 1367(c)(2).  Accordingly, the Court dismisses all remaining claims, counterclaims, and third-party claims, without prejudice, for lack of federal subject-matter jurisdiction.

### D.  Motion to Restrict Access

The remaining matter is the Defendants' motion to restrict public access to an exhibit to their summary judgment motion, pursuant to D.C. Colo. L. Civ. R. 7.2.  The exhibit in question is a 15-page "Technical Analysis Report" of Robert Kelso, which "explain[s] the purpose of the programming code [of the Tau software], the component parts of the code, where those components are derived from and what each part does."  The report discusses the Tau software and its underlying formulas in detail, and includes what appears to be the entirety of the software's code.  Although the Defendants' motion is rather perfunctory, it alleges that "allowing the public to access the code would divulge . . . trade secrets [used by the Defendants] and result in injury."

Having considered the strong public interest in access to judicial records against the parties' interests in keeping particular details about the specific components of the Tau software private so as not to disseminate confidential and proprietary market strategies, the Court finds it appropriate to grant the Defendants' motion.  Although the public has a broad interest in access to judicial records, the particular details of how the Tau software operates and the formulas it employs are not particularly important to the disposition of the claims herein, and thus, of minimal public interest; the pertinent information is identification of the Tau software and its functions generally.  Those matters are fully addressed by publicly-available evidence.  Accordingly, the Court grants the motion to restrict access and Exhibit T will remain under a Level 1 restriction.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment **(# 54)** is **GRANTED IN PART**, insofar as the Court finds that the Defendants are entitled to summary judgment on the Plaintiffs' claims of copyright infringement, and **DENIED IN PART**, insofar as the Court finds that it lacks subject-matter jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3).  Judgment shall enter in favor of the Defendants on the Plaintiffs' copyright claims and on the Defendants' counterclaim for a declaratory judgment that the Tau software constitutes a work for hire on behalf of DP Research.  The remaining claims, counterclaims, and third-party claims are **DISMISSED**, without prejudice, for lack of federal subject-matter jurisdiction.  The Defendants' Motion for Leave to Restrict Access **(# 55)** is **GRANTED**, and Docket # 55-1 shall remain under a Level 1 restriction.  Upon entry of

Judgment herein, the Clerk of the Court shall close this case.

Dated this 18th day of November, 2014.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge